UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

TIMOTHY TOM, JR.
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED,

    Plaintiff,

v.

    Case No. 17-CV-1413

GENERAC POWER SYSTEMS, INC.,

    Defendant.

## DECLARATION OF DANIEL JUEDES

I, Daniel Juedes, having first been duly sworn on oath, declare and state the following facts based on my personal knowledge, except those facts specifically stated on information and belief, and as to those facts, I believe them to be true:

1. I am currently employed by Generac Power Systems, Inc. ("Generac") as its Materials Supervisor at the Oshkosh, Wisconsin facility, a position I have held since June 2015.

2. As a Materials Supervisor, I have access to and am familiar with Generac's Employee Handbook and other policies and work rules. I also have knowledge of the expectations and practices of employees who report to me, including punching, reporting to work, taking breaks, and punching out of work.

3. Pursuant to my duties as Materials Supervisor, I know that Generac's policies and practices with respect to its hourly, manufacturing employees include the following:

    a. They are paid on an hourly basis, and entitled to overtime for all hours they may work in excess of forty (40) in a workweek.

b. They may be required to work overtime, but all overtime they work must be authorized by a manager in advance.

c. If they work overtime without receiving prior authorization from a manager, the time will be paid, but they may be subject to disciplinary action.

d. They are prohibited from working any time, including overtime, without recording that time and being fully paid for it; if they do so, they will be disciplined, up to and including termination.

e. They are expected and required to report any errors in their pay to their manager and the Human Resources Department so that those errors can be investigated and necessary corrections made.

f. They are also expected and required to notify their supervisors immediately if they have any problems with our time reporting.

The foregoing policies, and others, are explained to hourly manufacturing employees when they begin their employment with Generac. Some of the foregoing policies are also contained in Generac's Employee Handbook, which hourly manufacturing employees receive and review at the commencement of their employment.

4. I have never instructed any Generac hourly manufacturing employee (a) that they were exempt from the applicable overtime requirements; (b) that they should inaccurately enter the hours they actually work, whether regular time, overtime, or meal periods, or (c) that they should work through some or all of their meal periods without accurately recording that time as work time; nor have I authorized any of Generac's hourly manufacturing employees to work any hours—regardless of whether those hours were regular hours, meal periods, overtime hours (greater than 40/week)—for which I later refused to properly pay them.

5. In my position, I supervise Material Handlers and Team Leads.

6. My normal work hours are 7:30 a.m. to 4:30 or 5:00 p.m..

7. Each employee's designated schedule is programed into Generac's timekeeping software. I can change each employee's schedule at any time and for any period of time based on production needs or an employee's personal needs. For example, if an employee adjusts his/her schedule to come in early and work overtime, I change the set schedule for that particular day. I conduct several changes like this for my subordinate employees each week.

8. Hourly manufacturing employees at Generac's Oshkosh facility are required to punch in and out at the beginning and end of their shifts for attendance purposes.

9. Employees punch in by entering their unique employee identification number into one of several computer terminals positioned throughout the facility.

10. Most employees use one of two computer terminals closest to the building entrance and exit of the building.

11. For convenience, including socializing, accommodating unpredictable commutes and weather, allowing time to get settled in, etc., Employees are allowed to punch in before the scheduled start of their shifts, but they are not to start work until the scheduled start of their shift.

12. Upon punching in, the computer terminal shows a picture of a clock with the current time and states the time that the employee is expected to begin work and which will be reflected on the employee's time sheet for compensation purposes.

13. I often observe Material Handlers sitting near what we call the "command center" and socializing after punching in and before the scheduled start of the shift, and then they begin work at the scheduled start time.

14. Employees at Generac's Oshkosh facility all have an assigned shift. First shift is 7:00 to 3:30 p.m. and second shift is 3:30 to midnight. Each shift includes two paid rest breaks and an unpaid 30 minute meal period.

15. Material Handlers and Team Leaders on second shift start at 3:15 p.m. to allow time to prepare for production to begin at 3:30 on second shift.

16. A bell rings to indicate the start and end of the Oshkosh facility's standard shifts.

17. Bells also ring to indicate the start of the lunch period, a five minute warning for the end of the lunch period, and the end of the lunch period.

18. Employees are not required to be in the facility at any particular time prior to the start of their shift. The only requirement is that they be at their work station at the scheduled start of their shift.

19. Several employees who report to me arrive at work and punch in before their scheduled start time and tend to personal tasks like putting their lunch in the break room, getting coffee, or socializing with co-workers until the start of their shifts.

20. I am not aware of any employee working before the start of their shift without requesting and receiving an adjustment to his or her scheduled start time.

21. I am also not aware of any employee who has continued working after the end of his or her scheduled shift without a proper adjustment being made to his or her schedule.

22. Employees take paid rest breaks and an unpaid lunch break at established times during the shift.

23. All employees on the shift have a scheduled lunch break at the same time.

24. I am not aware of anyone working during their unpaid meal period without adjusting the end time of the meal period to receive a full 30 minute meal break.

25. I am aware of people returning to their work stations after the lunch bell rings to indicate the end of the lunch period, and those employees are routinely paid starting at the time the bell rings, even if they are not yet back at their work stations ready to work.

26. Each day, at about 3:15 or 3:20 p.m., before the end of first shift and just after the start of second shift for Team Leaders, I conduct a short transition meeting with the Team Leaders from both shifts to discuss the status of work and transition information from one shift to another.

27. Also, each day, we conduct a "huddle" with all employees on staff. At this meeting, we discuss the anticipated overtime that will be needed during the upcoming week. Sometimes I ask particular employees or they volunteer to come in early or stay late to complete the necessary overtime, other times the entire shift works overtime.

28. At one point, there were discussions within the Oshkosh facility management of eliminating the 15 minute overlap between first and second shifts to increase efficiency, but I argued successfully to keep that overlap, because we need time to share information between shifts, while everyone is still on the clock.

29. If an employee inadvertently fails to punch in or out, I am able to adjust the time records to accurately reflect the employee's work time.

30. On a regularly basis, I receive reports from employees that they had an erroneous punch time, and I verify the records, and update the timekeeping report.

31. I regularly approve requests from employees to work more hours than their scheduled shifts, including overtime.

32. Many employees receive significant overtime pay.

33. My performance evaluation at Generac is not impacted by the amount of overtime paid to employees under my supervision.

34. At no point during my employment with Generac, have I ever required or allowed an hourly manufacturing employee to work before their scheduled start time, during an unpaid meal period, or after their scheduled end time without making sure they were fully and properly paid for all of the hours they actually worked. I am not aware of any employees working any hours without being paid.

35. In my capacity as a Supervisor at Generac's Oshkosh facility I supervised Timothy Tom.

36. I had a good working relationship with Mr. Tom. At the end of Mr. Tom's employment, Mr. Tom asked and I agreed to serve as a reference for him with future employers, and Mr. Tom thanked me for being a good boss.

37. Mr. Tom complained to me on occasion about disagreements with co-workers.

38. Mr. Tom also requested at one point a fundamental change in his weekly work schedule – from five eight-hour days per week, to four ten-hour days.. Because the tasks performed by Generac's production employees require assistance from the material handlers reporting to me, I was not able to unilaterally grant this request. As a result, Mr. Tom elevated his request to Human Resources and the Plant Manager. Eventually, Generac had a meeting with Mr. Tom, HR and Plant Management to discuss his request. I was invited to the meeting, and that meeting notice is attached here as <u>Exhibit A</u>, though I was unable to attend. For production reasons, Generac was not able to provide Mr. Tom his requested schedule, which would have been different than the facility's production schedule.

39. Mr. Tom never complained to me about any problems with his timekeeping or compensation for time worked at Generac.

40. On several occasions, Mr. Tom asked to come in early and work overtime, and I granted those requests. I adjusted Mr. Tom's schedule and he was paid for the extra work time.

41. I am not aware of Mr. Tom starting work before his scheduled start time other than those occasions when he requested to do so and I adjusted his schedule accordingly.

42. At no point during my employment with Generac, have I ever required or allowed an hourly manufacturing employee to work before their scheduled start time, during an unpaid meal period, or after their scheduled end time without making sure they were fully and properly paid for all of the hours they actually worked.

43. In my position as Supervisor, I have had several employees complain to me about their rates of pay and request raises, I have had an employee complain to me that he or she was not paid for all hours he or she worked, I investigated and ensured they were paid correctly. Most, if not all of the time, EE's are misled and they have indeed been paid correctly.

I hereby affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 8, 2018.

s/ Daniel Judes
Daniel Juedes

34265408.2