UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

TIMOTHY TOM, JR.
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED,

    Plaintiff,

Case No. 17-CV-1413

v.

GENERAC POWER SYSTEMS, INC.,

    Defendant.

## DECLARATION OF ERIN THAYER

I, Erin Thayer, declare and state the following facts based on my personal knowledge, except those facts specifically stated on information and belief, and as to those facts, I believe them to be true:

1. I am currently employed by Generac Power Systems, Inc. ("Generac") as its Human Resources Manager responsible for Generac's Whitewater, Wisconsin facility, a position I have held since August 21, 2017.

2. I am a salaried, exempt employee and my normal work hours are approximately 8:00 a.m. to 5:00 p.m.

3. As an HR Manager, I have access to and am familiar with Generac's Employee Handbook and other policies and work rules and personnel records for employees at the Whitewater facility, which are maintained in the ordinary course of business. I also have knowledge of the expectations and practices of employees in the Whitewater facility.

4. Generac's Whitewater facility employs approximately 650 employees.

5. First shifts at the Whitewater facility runs from 6:00 a.m. to 2:30 p.m and 6:00am to 2:00pm.

6. Second shifts at the Whitewater facility generally runs from 2:00pm to 10:00pm and 2:30p.m. to 11:00p.m., and some employees are scheduled to start at 2:15 to allow for "handoff" from the first shift.

7. Third shift at the Whitewater facility generally runs from 10:00pm to 6:00am

8. Pursuant to my duties as HR Manager, I know that Generac's policies and practices with respect to its hourly, manufacturing employees include the following:

   a. They are paid on an hourly basis, and entitled to overtime for all hours they may work in excess of forty (40) in a workweek.

   b. They may be required to work overtime, but all overtime they work must be authorized by a manager in advance.

   c. If they work overtime without receiving prior authorization from a manager, the time will be paid, but they may be subject to disciplinary action.

   d. They are prohibited from working any time, including overtime, without recording that time and being fully paid for it; if they do so, they will be disciplined, up to and including termination.

   e. They are expected and required to report any errors in their pay to their manager and the Payroll Department so that those errors can be investigated and necessary corrections made.

   f. They are also expected and required to notify their supervisors immediately if they have any problems with our time reporting.

The foregoing policies, and others, are explained to hourly manufacturing employees when they begin their employment with Generac. Some of the foregoing policies are also contained in Generac's Employee Handbook, which hourly manufacturing employees receive and review at the commencement of their employment.

9. I have never instructed any of Generac's hourly manufacturing employees (a) that they were exempt from the applicable overtime requirements; (b) that they should inaccurately enter the hours they actually work, whether regular time, overtime, or meal periods, or (c) that they should work outside of the time recorded in the timekeeping system; nor have I authorized any of Generac's hourly manufacturing employees to work any hours—regardless of whether those hours were regular hours, meal periods, overtime hours (greater than 40/week),—for which I later refused to properly pay them.

10. Employees at Generac's Whitewater facility all have an assigned shift.

11. Each employee's designated schedule is programed into Generac's timekeeping software. The Whitewater facility uses 112 different schedules, including OT schedules.

12. The schedule can be changed by each employee's supervisor or by HR at any time and for any period of time. For example, if an employee adjusts his schedule to come in early and work overtime, the supervisor changes the set schedule for that particular day. Each supervisor changes his employees' set schedules in the timekeeping system any time the facility adds overtime, works weekends, or upon request from an individual employee.

13. Each supervisor changes his employees' set schedule in the timekeeping system in this manner on average five times per employee per month, sometimes more depending on production needs.

14. Hourly manufacturing employees at Generac's Whitewater facility are required to punch in and out at the beginning and end of their shifts for attendance purposes. They are also required to punch in and out for lunchtime if they leave the property.

15. Employees punch in by entering their unique employee identification number into computer terminals positioned throughout the facility.

16. Most employees use one of two computer terminals closest to the building entrance and exit of the building or a computer in their workstation.

17. For convenience, including socializing, accommodating unpredictable commutes and weather, allowing time to get settled in, etc., employees are allowed to punch in before the scheduled start of their shifts, but they are not to start work until the scheduled start of their shift.

18. Employees are not required to be in the facility prior to the start of their shift. The only requirement is that they be at their work station at the scheduled start of their shift.

19. Upon punching in, the computer terminal shows a picture of a clock with the current time and states the time that the employee is expected to begin work and which will be reflected on the employee's time sheet for compensation purposes. Upon punching out, the computer terminal shows a picture of a clock with the current time and states the time that the employee was expected to conclude work and that will be reflected on the employee's time sheet for compensation purposes. The employees see these screens every day upon punching in and out. There are also bells at the Whitewater facility, signaling the start of the work shifts, the paid rest breaks, the beginning and end of the unpaid meal periods, and the end of the work shifts.

20. I observe employees tend to personal tasks after punching in to work, such as putting coats or bags in their lockers, bringing their lunch into the break room, reading the newspaper, chatting with friends, or standing around.

21. I am not aware of any employee working before the start of their shift without requesting and receiving an adjustment to his or her scheduled start time.

22. I am also not aware of any employee who has continued working after the end of his or her scheduled shift without a proper adjustment being made to his or her schedule.

23. If employees work outside of their regularly scheduled shift, they are to ask their supervisor for permission, and each supervisor is responsible for updated the employee's schedule in the timekeeping system.

24. If an employee's work time is not recorded correctly, the employee asks his or her supervisor or HR to update the time entry. This happens regularly.

25. Employees take paid rest breaks and an unpaid lunch break at established times during the shift, unless they work in Rotors and Stators, which get two paid breaks and work 8-hour shifts each day.

26. All employees in the same department take lunch at the same time. We have eight different lunch breaks at Whitewater facility.

27. I am not aware of anyone working during their unpaid meal period without adjusting the end time of the meal period to receive a full 30 minute meal break.

28. I am aware of people returning to their work stations after the lunch bell rings to indicate the end of the lunch period, and those employees are routinely paid starting at the time the bell rings, even if they are not yet back at their work stations ready to work.

29. Many employees receive significant overtime pay. In 2017, for example, Generac paid a total of $3,436,252 (for 137,888 hours) in overtime to employees in Whitewater,.

30. I am not aware of any employees working any hours without being paid.

31. Many of the jobs in Generac's Whitewater facility are "substitute" positions, meaning the person on second shift replaces a person on first shift; they cannot both work at the same time.

32. I am aware of the lawsuit filed against Generac by a former hourly manufacturing employee named Timothy Tom, Jr., alleging that he and individuals working in the following 38 job titles, were not paid for all of the hours they actually worked: Material Handler I, Material Handler II, Manufacturing Technician, Maintenance Technician, Welder, Welder I, Assembler I, Assembler II, Line, Shrouder, Shipping and Receiving, Picked and Packed Parts, Wire Assembler, Fabrication, Fabrication Utility, Machine Operator, Machine Operator – Fabrication I, Machine Operator – Fabrication II, Laser Operator, Brake Operator, Press Brake Operator, Turret Punch Press Operator, Painter, Paint II Painter, Paint Hanger, Paint Hanger I, Tester I, Tester II, Fork Lift Operator, Utility, Cycle Counter, Receiving, Research & Development, Quality Assurance Inspector, Quality Technician I, Warehouse, Warehouse Lead, and Team Lead.

33. I am aware that eleven other current or former employees have "opted in" as additional plaintiffs in this case. None of the plaintiffs are or were employed at the Whitewater facility.

34. At the Whitewater facility, the positions Plaintiff proposes to include in the class are supervised by 11 different supervisors.

35. The jobs cross over three different shifts. The second shift employees (both those who start at 2:15 and those who start at 2:30) generally replace a counterpart from first shift. Third shift employees that start at 10:00pm replace a counterpart from second shift in Rotors and Stators and the first shift employees in this department replace a counterpart from third shift.

36. The jobs each involve different tasks to start and end their shifts.

37. The employees all work in different areas of the facilities.

38. Employees come to me or my team in HR with concerns. For example, when other employee's believe they have pay or timekeeping disparities, they have complained to HR and HR addressed it. My team and I handle approximately 25 employee complaints, including but not limited to those regarding pay, on a monthly basis.

39. No employee has ever complained to me that they are not being paid for all the time they work. The payroll complaints I have received pertain to situations in which an employee forgot to punch in or out, or did not get paid for a vacation day or a company-paid holiday.

I hereby affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 8, 2018.

s/ Erin Thayer<br>
Erin Thayer

34351785.2