UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

TIMOTHY TOM, JR.
ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED,

    Plaintiff,

Case No. 17-CV-1413

v.

GENERAC POWER SYSTEMS, INC.,

    Defendant.

## DECLARATION OF KAREN LETOURNEAU

    I, Karen Letourneau, having first been duly sworn on oath, declare and state the following facts based on my personal knowledge, except those facts specifically stated on information and belief, and as to those facts, I believe them to be true:

    1.    I am currently employed by Generac Power Systems, Inc. ("Generac") as its Senior Human Resources Manager responsible for Generac's Oshkosh and Berlin, Wisconsin facilities, a position I have held since May 2017. My predecessor as Sr. HR Manager for Generac's Oshkosh, Wisconsin facility was Jorge Aguliar who held that position from March 2016 to April 2017. Prior to Mr. Aguliar, Joel Luepke held the position.

    2.    I am a salaried, exempt employee and my normal work hours are approximately 8:00 a.m. to 5:00 p.m.

    3.    As a Sr. HR Manager, I have access to and am familiar with Generac's Employee Handbook and other policies and work rules and personnel records for employees at the Oshkosh

facility, which are maintained in the ordinary course of business. I also have knowledge of the expectations and practices of employees in the Oshkosh facility.

4. Generac employs 2956 people throughout all its facilities in Wisconsin.

5. Generac's Oshkosh facility employs approximately 160 employees.

6. At the Oshkosh facility, we produce large-scale industrial generators. Other Generac facilities produce different product lines. The schedules and work needs of each facility vary in some ways depending on the types of products that are produced. Some products are more seasonal or cyclical, which means certain times of the year are busier. Demand for some products is impacted by weather or natural disasters, which can also impact the work hours at the facility.

7. Generac acquired the Oshkosh facility in 2013. Many of the employees at the Oshkosh facility worked for Generac's predecessor before the acquisition. After the acquisition, Generac has worked to gradually implement its own policies and procedures at the facility in place of those of its predecessor.

8. First shift at the Oshkosh facility runs from 7:00 a.m. to 3:30 p.m.

9. Second shift at the Oshkosh facility generally runs from 3:30 to midnight, so some employees are scheduled to start at 3:15 to allow for "handoff" from the first shift.

10. Pursuant to my duties as Sr. HR Manager, I know that Generac's policies and practices with respect to its hourly, manufacturing employees include the following:

    a. They are paid on an hourly basis, and entitled to overtime for all hours they may work in excess of forty (40) in a workweek.

    b. They may be required to work overtime, but all overtime they work must be authorized by a manager in advance.

c. If they work overtime without receiving prior authorization from a manager, the time will be paid, but they may be subject to disciplinary action.

d. They are prohibited from working any time, including overtime, without recording that time and being fully paid for it; if they do so, they will be disciplined, up to and including termination.

e. They are expected and required to report any errors in their pay to their manager and the Payroll Department so that those errors can be investigated and necessary corrections made.

f. They are also expected and required to notify their managers immediately if they have any problems with our time reporting.

The foregoing policies, and others, are explained to hourly manufacturing employees when they begin their employment with Generac. Some of the foregoing policies are also contained in Generac's Employee Handbook, which hourly manufacturing employees receive and review at the commencement of their employment. A true and correct copy of the handbook is attached hereto as Exhibit A. Pursuant to my review of those records, I know that employees Timothy Tom and Charles Werba acknowledged receipt of the foregoing handbook onSeptember30, 2015 and September 2, 2014, respectively.

11. I have never instructed any of Generac's hourly manufacturing employees (a) that they were exempt from the applicable overtime requirements; (b) that they should inaccurately enter the hours they actually work, whether regular time, overtime, or meal periods, or (c) that they should work outside of the time recorded in the timekeeping system; nor have I authorized any of Generac's hourly manufacturing employees to work any hours—regardless of whether those hours were regular hours, meal periods, overtime hours (greater than 40/week),—for which I later refused to properly pay them.

12. Employees at Generac's Oshkosh facility all have an assigned shift.

13. Each employee's designated schedule is programed into Generac's timekeeping software. The Oshkosh facility uses 45 different schedules.

14. The schedule can be changed by each employee's manager or by HR at any time and for any period of time. For example, if an employee adjusts his schedule to come in early and work overtime, the supervisor changes the set schedule for that particular day.

15. Each supervisor changes his employee's set schedule in the timekeeping system in this manner on average approximately 4 times per month.

16. Hourly manufacturing employees at Generac's Oshkosh facility are required to punch in and out at the beginning and end of their shifts for attendance purposes.

17. Employees punch in by entering their unique employee identification number into computer terminals positioned throughout the facility.

18. Most employees use one of two computer terminals closest to the building entrance and exit of the building.

19. For convenience, including socializing, accommodating unpredictable commutes and weather, allowing time to get settled in, etc., employees are allowed to punch in before the scheduled start of their shifts, but they are not to start work until the scheduled start of their shift.

20. Employees are not required to be in the facility prior to the start of their shift. The only requirement is that they be at their work station at the scheduled start of their shift.

21. Upon punching in, the computer terminal shows a picture of a clock with the current time and states the time that the employee is expected to begin work and which will be reflected on the employee's time sheet for compensation purposes. Upon punching out, the computer terminal shows a picture of a clock with the current time and states the time that the

employee was expected to conclude work and that will be reflected on the employee's time sheet for compensation purposes. The employees see these screens every day upon punching in and out. There are also bells at the Oshkosh facility, signaling the start of the work shifts, the paid rest breaks, the beginning and end of the unpaid meal periods, and the end of the work shifts.

22. I observe employees tend to personal tasks after punching in to work, such as putting coats or bags in their lockers, bringing their lunch into the break room, reading the newspaper, chatting with friends, or standing around.

23. I am not aware of any employee working before the start of their shift without requesting and receiving an adjustment to his or her scheduled start time.

24. I am also not aware of any employee who has continued working after the end of his or her scheduled shift without a proper adjustment being made to his or her schedule.

25. If employees work outside of their regularly scheduled shift, they are to ask their supervisor for permission, and each supervisor is responsible for updated the employee's schedule in the timekeeping system.

26. If an employee's work time is not recorded correctly, the employee asks his or her supervisor or HR to update the time entry. This happens regularly.

27. Employees take paid rest breaks and an unpaid lunch break at established times during the shift.

28. All employees on the shift take lunch at the same time.

29. I am not aware of anyone working during their unpaid meal period without adjusting the end time of the meal period to receive a full 30 minute meal break.

30. I am aware of people returning to their work stations after the lunch bell rings to indicate the end of the lunch period, and those employees are routinely paid starting at the time the bell rings, even if they are not yet back at their work stations ready to work.

31. Many employees receive significant overtime pay. In 2017, for example, Generac paid a total of $388,547 (for 13,699 hours) in overtime to employees in Oshkosh.

32. I am not aware of any employees working any hours without being paid.

33. Many of the jobs in Generac's Oshkosh facility are "substitute" positions, meaning the person on second shift replaces a person on first shift; they cannot both work at the same time.

34. I am aware of the lawsuit filed against Generac by a former hourly manufacturing employee named Timothy Tom, Jr., alleging that he and individuals working in the following 38 job titles, were not paid for all of the hours they actually worked: Material Handler I, Material Handler II, Manufacturing Technician, Maintenance Technician, Welder, Welder I, Assembler I, Assembler II, Line, Shrouder, Shipping and Receiving, Picked and Packed Parts, Wire Assembler, Fabrication, Fabrication Utility, Machine Operator, Machine Operator – Fabrication I, Machine Operator – Fabrication II, Laser Operator, Brake Operator, Press Brake Operator, Turret Punch Press Operator, Painter, Paint II Painter, Paint Hanger, Paint Hanger I, Tester I, Tester II, Fork Lift Operator, Utility, Cycle Counter, Receiving, Research & Development, Quality Assurance Inspector, Quality Technician I, Warehouse, Warehouse Lead, and Team Lead.

35. I am aware that eleven other current or former employees have "opted in" as additional plaintiffs in this case. Of those, all but one are or were employed at the Oshkosh facility.

36. Of the 38 jobs that Plaintiff proposes to include in the class, the eleven opt-in plaintiffs represent only five of the 38 jobs. Jon Herscheberger was an Assembly I, Lee Vang and Marcella Elandt are Assembly I, Mark Tomaschefski is an Assembly II, Bee Change and Curtis Benzinger are Material Handlers, Anival Fernandez was a Material Handler, Russell Hahn was a temporary employee, Anthony Wilson was a Painter II, and Charles Werba is a Team Lead.

37. At the Oshkosh facility, the positions Plaintiff proposes to include in the class are supervised by 7 different supervisors.

38. The jobs cross over three different shifts. The second shift employees (both those who start at 3:15 and those who start at 3:30) generally replace a counterpart from first shift, whereas the facility is not yet operating when the first shift employees arrive for work.

39. The jobs each involve different tasks to start and end their shifts.

40. The employees all work in different areas of the facilities.

41. In my capacity as a Sr. HR Manager at Generac's Oshkosh facility I interacted with Timothy Tom.

42. Mr. Tom came to me with complaints at the Oshkosh facility, including complaints about co-workers being loud, messy or mean and a request for a raise.

43. On one occasion Mr. Tom came to me to request an adjustment to a schedule of four ten-hour days. Mr. Tom had previously gone to his supervisor, Dan Juedes, and then to Materials Manager, Mark Howell, who both denied the request. We held a meeting with Mr. Tom, including myself, Randy Hopfensperger, Supply Chain Manager and Mark Howell to discuss Mr. Tom's request.

44. Mr. Tom never complained to me about any problems with his timekeeping or compensation for time worked at Generac.

45. Other employees also come to me in HR with concerns. For example, when other employee's believe they have pay or timekeeping disparities, they have complained to HR and HR addressed it. I handle approximately 10 employee complaints, including but not limited to those regarding pay, on a monthly basis.

46. No employee has ever complained to me that they are not being paid for all the time they work. The payroll complaints I have received pertain to situations in which an employee forgot to punch in or out, or did not get paid for a vacation day or a company-paid holiday.

47. In my capacity as a Sr. HR Manager at Generac's Oshkosh facility I interacted with Marcella Elandt, who I understand to be an employee who completed a form to "opt-in" to this law suit. In 2014, Ms. Eland requested that she not be required to work more than 40 hours per week, and Generac has complied with that request.

I hereby affirm under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 8, 2018.

s/ Karen Letourneau
Karen Letourneau

34300094.2
